I'd like to reserve three minutes for rebuttal, please. Okay. Whenever you're ready, Mr. Reardon. Good morning, and may it please the Court. My name is Sean Reardon, and along with Anne McClintock, we represent Raul Mercado-Moreno. The Court would have to do something unprecedented here to uphold the result below. It would have to sanction, on a motion for a sentence reconsideration, the reopening of a fact question that had been definitively determined at the original sentencing. The government had the opportunity to object, at the original sentencing, to the drug quantity finding of 4.2 kilograms of actual methamphetamine. But why did it matter at the original sentencing, when the only relevant question was whether or not it was more than 1.5 kilograms or more? Well, Your Honor, it mattered for a 3553A analysis. This sentencing occurred after Booker, at which point the sentencing guidelines had become advisory. But if more than 1.5 kilograms was sufficient to trigger the highest level, which was then 38, who cared at that point whether it was 4.2 or 4.3 or more than 4.3? Isn't that error sort of irrelevant at that time? It's significant now, but it was not then. Well, Your Honor, first of all, I don't believe there was any error in the determination of 4.2 kilograms. The error was by the probation officer. It looks to me like it was a transposition of the digits. Two got substituted for three. Your client clearly admitted to the higher amount during the Rule 11 plea colloquy, in the plea agreement. I mean, there's just no question in my mind that the correct number was 4.3. And that didn't include the 40 pounds seized from the Turlock meth lab. Your Honor is correct that 4.3 would have been the more accurate figure based on the pre-sentence report. So doesn't that create an ambiguity in the record that it would be appropriate on your 3582 motion for the district court to resolve? No, Your Honor, because as you pointed out, this was merely a transpositional error of a single digit. It was either 4.2 or 4.3. The more accurate finding might have been 4.3, but there was no support based on any of the parties' positions. But it doesn't require a reopening of the record on an open record, does it? The district court can look at the evidence that was before the sentencing court on the original sentencing and clear up the ambiguity, can it not? I mean, we're only talking about a 300-gram difference here. No, Your Honor. If there was an actual determination of drug amount, the proper rule should be to prevent this type of relitigation of facts. So in the plea colloquy, your client admitted that he was involved in this meth lab investigation or the bust of the meth lab, and then there was evidence in the PSR that that was 40 pounds. So the government argues, well, even if the district court made a determination, it was only about the amount distributed. It wasn't about relevant conduct. What do we do about that? Well, if it's not about relevant conduct, then there simply is no basis. Well, the government says he admitted it, so it is relevant conduct, and so the 40 pounds could be considered by the district court at sentencing, and then the modification court could consider it since it was part of the record. That's what I understand is part of the government's argument. I believe that's correct, Your Honor. But relevant conduct principles are incredibly fact-intensive, and not every participant in a conspiracy is liable for all the amounts of the drugs. Well, this guy's not just any participant. He's the ringleader. He's the big kahuna who basically ran the drug trafficking organization and admitted organizing, supervising, and leading the group that not only distributed methamphetamine but manufactured it. And he admits it, right? He says that the court asked him if he was managing individuals who were involved in making meth at the laboratory found by law enforcement on April 12, 2004, and his answer is yes. Correct, Your Honor. So doesn't that resolve any question? If there had not been an actual fact determination of the quantity of methamphetamine for which he was responsible, then the court would be absolutely correct that the district court... Well, that was just distribution. He didn't relate to anything else. He just said the amount that was distributed. He didn't discuss the conspiracy. Your Honor, if we were to have a full-blown factual hearing on which quantities are actually attributable, I believe we'd be able to address in detail whether the relevant conduct factors would indeed warrant attributing other amounts to him and what amounts. There's certainly some ambiguity. But I thought he admitted supplying the pseudoephedrine and directing the conspirators who were running the lab. Why isn't that sort of textbook relevant conduct? In his factual basis, Your Honor, it's correct that there is a phrase where he admits to managing that laboratory that you're referring to. So why isn't that relevant conduct that the district judge can appropriately consider in connection with your 3582? It could be. And again, this gets back to the threshold question. The threshold question, Your Honor, is can the district court engage in new fact finding to try to resolve an ambiguous record where there is no ambiguity? Isn't your argument that plea colloquies aside and PSI, pre-sentence investigations aside, that the judge then has responsibility at sentencing to make certain determinations and that those are determinations that you rely upon in determining whether or not there was a definitive ruling in respect to drug quantity?  Absolutely, Your Honor. And to get back to Judge Tallman's original question, because it's an important one, why did it matter that the judge found 4.2 kilograms of actual methamphetamine at the original sentencing? It mattered because the judge not only had to determine the sentencing guidelines range that was applicable, but the judge also had to determine what the appropriate sentence was under all of the 3553A factors, including the nature and circumstances of the offense. And because the nature and circumstances of the offense necessarily involved what conduct the defendant actually engaged in, including what amount of drugs can be attributable to him, the court necessarily had to make a determination as to what that figure was. It did matter. It was not an empty figure. I'm still trying to understand why it mattered if the only question was did it exceed 1.5 kilograms? Because that's the only guidelines question that the court was answering, but under 3553A the court had to also look to the nature and circumstances of the offense. And so let's say the court had decided that instead of it being 4.2 kilograms or 4.3, given the transpositional error, which I agree is obvious from the record, and the court had instead found that it was 44.2 or 44.3 kilograms, that certainly might have had an effect on the sentence that the judge would have believed was appropriate under 3553A. Let me ask you this. Can you distinguish your case from the other cases where courts have said you can go back and have a supplemental hearing? The kinds of pronouncements the judges made in those cases that you think can be distinguished from your case as to drug quantity. Absolutely, Your Honor. In each of the out-of-circuit cases that the government relies on for the proposition that a court may reopen back questions of sentencing, one of two things was clear. Either it was already clear from the sentencing record that the individual had distributed far in excess of whatever the highest threshold quantity was. So, for example, in the Hall and Davis cases out of the Seventh Circuit, there were in all of those cases in excess of 17 kilograms of the given substance. Or, for the other cases, the original finding at sentencing had only been that the quantity was greater than whatever the amount was that was the highest threshold at that point. So the analogy would have been, in this case, if Judge Wanger had found that there were 1.5 kilograms or more of methamphetamine distributed by Mr. Moreno, then we would be in very different territory here. We would be in territory where the court had not made a definitive factual finding. And on this motion, the court would then have an open question. Well, how do I apply the guidelines now? Because there was no definitive figure. He pled to conspiracy as opposed to distribution. Correct, Your Honor. He pled to count two. And the conspiracy as charged included both distribution and manufacturing. The conspiracy, Your Honor, I would have to look again at the indictment. I think it does. It's a pretty broadly written purpose and scope of the conspiracy included both distribution and manufacturing. I'll give you a little time on rebuttal, but you've burned up your 10 minutes. Thank you. Good morning. May it please the Court, my name is Kathy Servatius. I'm representing the government, as I did in 2004 when I indicted the defendant in the case. And you thought you were done with this case, right? But when you have a long sentence on the defendant, you're never really done. They always come back. In this case, the defense would have you believe that when Judge Wanger adopted the PSR and stated on the record what his finding was as to the offense-level calculation that he intended to disregard the other facts that were in the PSR. I think that if the defendant— Did the judge anywhere explicitly adopt the findings of the PSR on the record? Because that's what some of us do, what some judges do. If they intend to rely upon those who say at least that those were all before them as part of a sentencing decision, they would say, I adopt the findings of the PSR. Did that happen? It didn't happen until the court filled out the statement of reasons, at which point it said it adopted the PSR. But the judge did not state it on the record. However, the courts have implicitly found that the courts have— when there's no objection to the PSR, the courts have found that the district court doesn't err on relying on it, regardless of whether it states so. So it's in the J&C but not orally stated on the record? I don't know if it's in the publicly filed J&C because the statement of reasons that's prepared for the sentencing guidelines, I don't think they usually get filed in the docket. But the information was provided to the judge in this case. Our probation office collected for all of the 3582s, would collect the pre-sentence report, the judgment, and the statement of reasons, and I submitted that to the district court judge. Maybe I should ask this question to Judge Oliver. But I always thought that the statement of reasons was like an appendix or appended to the judgment and commitment because it goes to the Bureau of Prisons and to the Sentencing Commission to explain why the district court fashioned the sentence the way that it did. Because of some of the specifics that might be in it. For example, if there was a downward departure, it's not put in the public record. That's not what I asked. I thought it was essentially part of the judgment and commitment in the sense that it explains both to the commission, the defendant, and ultimately the Bureau of Prisons why the court did what it did at sentencing. Yes. The form is required to be filled out by the court to explain its sentencing. And it's filed or given to the clerk at the same time that the judgment and commitment order is not? I receive it by email when the judgment is issued, but I don't believe it's actually entered onto the docket. Well. But, yes, I believe that it. But it's part of the record. Right. Is it? Yes. Okay. I just believe that in this case where a district court judge has no objections before it, that it implicitly adopts the PSR when it makes its finding. Let me ask you a slightly different question. In the plea colloquy, you were very careful to ask the judge to make a finding about total meth, I think it was, as opposed to just regular meth as a different issue. On the conspiracy point, I don't think there was a finding about 40 pounds of total meth. Does that make a difference in our analysis of this? I don't believe so because the analysis for the 3582 starts with the court figuring out what the sentencing guideline range would have been had the amendment been in place at the time. And to do that, it looks at the pre-sentence report, and the case law is clear that the court's allowed to rely on undisputed facts that are contained within the PSR. There has to be an open question about the drug quantity as it relates to the issue. When you're seeking to make the change or see whether or not there's been a reduction, you then have to look back and see whether there's an open question. If the amount has been determined, and it has in most cases, you just drop the person two levels or whatever is required. So it's only in special cases that you'd have to go back into the record. So you can have hundreds of these, and there may be only 10, or just for purposes of argument, you'd have maybe only 10, where you'd have to do anything other than look at the fact that the drug quantity finding now requires a different result. That's the normal case. We've done hundreds of these, and so it's only when you get some question about whether the quantity was left open as it relates to the factual issue, as it relates to the resentencing. If it's closed, if the judge, despite all the options he or she might have had, has made a definitive determination, then you wouldn't go back. Wouldn't you agree? I guess it would depend on how the court was reaching its decision that further fact-finding is necessary. Some courts have said that factual findings are set in stone at the sentencing based on Dillon and based on 1B1.10. However, the Adams Court and the Moore Court said, no, it's not because 3582, it's not because the Supreme Court or the Sentencing Commission prohibits it. It's just because it's sort of like a law of the case, because in sentencing, Rule 32 establishes the objections that have to be made and what a district court can rely on when there's objections and when there's no objections. And so in most cases, they say there's no reason to go back. In United States v. Rios, which was a Second Circuit case, there had been an addendum on one of the crack resentencings, and the probation office had thrown in, in the PSR, that it was about 5 kilograms of crack. However, the defendant had only admitted to an excess of 1.5 at the plea, and the court looked at that and said, where did those numbers come from? Because it's surely not supported by any of the relevant conduct that was set in the PSR. And on that basis, they had an evidentiary hearing and they had the FBI agent come in and testify to the quantities. The judge also applied the findings in that evidentiary hearing to a co-defendant. Neither of the defendants were present at the time that the agent testified or was cross-examined. So basically, if the court finds that this rule that permits the further fact finding is more of a law of the case, sort of a judicial economy, then law of the case can be avoided if somebody demonstrates that the finding is clearly erroneous, which the defendant here didn't attempt to do. The thing that's intriguing to me about this case is that the sentencing commission changed the numbers. It basically increased from 1.5 to 4.5 kilograms and adjusted the offense level from, what is it, 38 to 36 as a result. So it's a little bit like we've changed the rules of the game afterwards and now the court is being asked to go back and look at the original sentence that was imposed on this 3582 motion to ask whether or not the court will entertain an adjustment to the sentence as a result of the change by the sentencing commission. I think that's correct. And I think that if the court looked at the factual record of the sentencing, including the plea, the PSR, and the judge's statement, the question really is did the court intend to make a finding that the defendant wasn't responsible for the methamphetamine manufacturing activities? It doesn't make any sense in light of his admissions in the plea agreement. And if you look at it that way, it's like, okay, now we look at the PSR. Is this 4.2 finding supposed to be definitive as to the full extent of the relevant conduct that can be considered on the drugs? And since it doesn't account for the other quantities in the PSR, it seems unlikely. It's not unusual, at least in my experience, to have a lot of things in the PSR that could be attributed to a particular defendant and that the prosecutor, defense counsel, everybody decides they're going with a lower amount. They've decided that 38 is the right number for this case. And there's more drugs there. They're not even concentrating on the rest of it. I've had PSRs with lots of things in them with no focus at all on them. But the judge, I and others, have made findings about drug quantity. We're going to have to relitigate all these cases where the records might support something more than what was there in the first instance. I believe that this case is really no different than the cases where the court makes a finding that it's in excess of 1.5 but the PSR showed it was more. And in all of the cases that the defendant cites, the courts went back to the PSR to see if they could take the sentencing record and make a finding as to whether or not the reduction was applicable to the defendant. There are circuits that hold that it's the defendant's burden to do so, and the ambiguity is held to find he doesn't meet his burden. This court in United States v. Sprague basically said that once the defendant shows, it's almost like a burden of production, once the defendant shows that his guideline was calculated with reference to this particular guideline section, then the government has to come up with. As I read Sprague, in that case, the court considered additional expert testimony and evidence at the hearing. Is that right? Correct. So it wasn't just looking at the record. It was actually introducing additional evidence. Correct. And in all of the cases for Amendment 484, that was where they said you have to remove the mixture, you have to remove items from the mixture that aren't usable. And the defense would isolate that to that particular amendment because it's implicit that you would have to do so. However, I think it also supports that there's no prohibition against the district court looking at these things to find out. And in this case, Judge Ishii had to make a finding as to whether Judge Wanger intended not to hold the defendant responsible for his manufacturing activities. And it really would make no sense in light of his omissions at the plea that that would have been his intent. So the other circuits that ruled on this said that the modification court's decision couldn't be, or finding, couldn't be inconsistent with the findings of the sentencing court. Correct. And so do we run into that problem here of an inconsistency? Not if you look at the record at the PSR. The PSR says the defendant was the leader of manufacturing activities, that there was 40 pounds of methamphetamine in a laboratory site. And there was no finding to the contrary by the district court. Correct. And there was no objection. Thank you. Thank you very much. Thank you. Your Honor, Judge Ikuda just brought up a question about whether the findings were contrary. The findings made on this motion were contrary to those at the original sentencing. They were because a specific factual determination had been made that 4.2 kilograms was attributable to the defendant. And that was the same finding that the – But there wasn't – was there a finding as to the conspiracy relating to the laboratory? I didn't see any finding on that other than the admission during the plea colloquy that he was managing the people who were manufacturing it. Was there anything else that – It was an implicit determination in the PSR not to attribute that to the defendant. Otherwise, the PSR would not have been able to – By implicit, you mean that the PSR didn't – Did not quantify that as conduct that was attributable to him. But how can we say that's implicit when the numbers at that point were different? So it was not a finding that would have had any materiality to the sentencing. Right. I mean, who cares whether it was another 15 kilograms based on 40 pounds of a mixture containing methamphetamine? Well, it goes back to the 3553A issues that the courts all need to apply. It also goes to a point that the Adams Court made, the Eighth Circuit decision from 1997 that we believe sets out the proper rule. But didn't we say in Sprague that on a 3582C2 motion that the district court can employ alternative means of determining whether or not the guideline amendment applies? Only on the unique aspects of the amendment there at issue. Amendment 484 changed the manner in which drug quantity was determined. But nothing turned on that in the opinion. I mean, after reading your briefing, I looked at the opinion, and the opinion states that very generally it doesn't say this is limited to this particular amendment. Well, Your Honor, as I hope Your Honor would agree, holdings are generally limited to the issues that are under consideration in the case at hand. And so certainly the Ninth Circuit didn't have the opportunity to have to comment on the specific nature of that. But the amendment itself, because of what it required courts to do, which was to look at the how drug quantities are determined, it necessarily implicated new fact finding on any motion. But doesn't that apply to my questions with regard to changing the maximum levels from 1.5 to 4.5? To me, that's just like having to go back and recalculate the quantity when it's contained in a mixture of soluble liquids. Well, Your Honor, the sentencing commission has made clear that when the court is entertaining a motion of this sort, it's to apply the guidelines in the same manner that they would have been applied at the time of the original sentencing. But it might have made a difference. In fact, it had to have made a difference at the time. Had the minimum been 4.5, he admitted to 4,376.1 grams. And so in order to get to 4.5, the district court would have had to consider some of the evidence the contraband sees from the lab, would it not, in order to determine whether he met or exceeded the 4.5-kilogram level? Well, the district court in sentencing made the specific quantity determination based on the parties' positions. Parties, including the prosecution, in these cases, they routinely determine how much of the drug quantity they can actually prove by preponderance. But both sides stipulated that it was a Level 38 case, didn't you? Yeah, they also agreed on it. But they didn't just stipulate that it was a Level 38 case. If that's all they had done, we would be in different territory because that would have only indicated more than 1.5. Instead, the parties agreed, as the sentencing court pointed out and as was noted in the PSR, to a specific amount. Neither party objected. And did the government argue at sentencing that there's this other drug quantity out there, Judge, and you should consider that? Did the government do that? No, they didn't. In terms of the overall 3553A factor determination? No, the government did not object to the pre-sentence report, which found 4.2, 4.3, and then it did not object at sentencing to the specific figure of 4.2. And not only was the figure relevant for 3553A purposes, but as the Adams Court points out, it was also relevant under Guidelines Provision 6B.1.2, where the court, when other counts are being dismissed, has to determine whether the offense. So there was a guidelines reason as well for the district court to consider all of the drugs that were at issue. Yes, Your Honor. I thought the government had agreed to recommend 210 months' imprisonment. Is that right? Correct, Your Honor. So would there have been a reason for the government to argue or ask the district court to make findings of additional drug quantities? Would that have made any difference? I don't want to speculate as to the government's particular motivation for agreeing to the quantity that they agreed to, but in the course of the plea colloquy itself, the prosecutor noted that there were four transactions that the government was quantifying, and that there was another transaction that the government was not quantifying. Now, as Judge Oliver pointed out, there were... Transaction meaning distribution. That's what I understand. And so there must have been a reason why the government decided those are the four transactions that matter here. And it could have been a proof issue, Your Honor. The government regularly understands that it cannot prove by a preponderance of the evidence, or depending on how much it would increase the guidelines by clearing convincing evidence. Let me ask you a practical question. Does the 210-month sentence also fall within the upper end of the range of a level 36 if the quantity is 4.2? Yes. The amended guidelines range, if we were to prevail on this, would be 168 months to 210 months. And given the government's agreement, the district court would still have the agreed to look at it under 3582C2. Is that right? If this case were remanded for a determination of whether the sentence should actually be lowered, this is the step two of the two-step process? Right. But the district court would be within its authority to impose the same sentence, or to refuse to change the sentence, would it not? It would, so long as the discretion was exercised consistent with reasonableness and with fact findings that were not... Okay. All right. I think we have your argument in mind. Thank you very much. Thank you. Case just argued is submitted.
judges: Tallman, Ikuta, Oliver